over, if the city court had any discretion in the matter, the order was properly made under section 3271. It was made upon motion founded upon regular notice, and after a hearing on each side. In that aspect of the case the exercise of that discretion will not be disturbed.

Order affirmed, with costs. All concur.

(37 App. Div. 629.)

## BERGSTRESSER v. LODEWICK.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

BANKS—INSOLVENCY—PRIORITIES OF CLAIMS.

Where one delivered money to a bank to pay his note when presented for payment, and the identity of the money is found in the increased amount of the assets at the time of the failure of the bank by the amount of such money left with it, he is entitled to such sum in preference to the general creditors of the bank.

Appeal from equity term.

Action by Moses Bergstresser against Charles A. Lodewick, as receiver. From a judgment for plaintiff, defendant appeals. Affirmed.

The following is the opinion of the court below (NASH; J.):

The case here cannot be distinguished in principle from that of People v. City Bank of Rochester, 96 N. Y. 32. There the opinion of the court says that the transaction was not between the bank and Sartwell, Hugh & Ford in their relation of debtor and creditor, nor in the relation of bank and depositor. The object of the firm of Sartwell, Hugh & Ford was to provide a fund for the payment of specific notes, and the engagement of the bank was to apply that fund to such payment. Thus a trust was created, by which the bank could not profit, and to the benefit of which the receiver was not entitled. There the checks became assets in the hands of the bank, and the avails went into the general business of the bank, swelling its assets by the amount of the checks. The proceeds of the checks could not be in any manner otherwise traced than as the amount of the assets of the bank at the time of its failure were increased by the amount of the checks. The court says, in regard to this: "The checks of the petitioners were money assets in the hands of the bank, and were so treated by all parties. They were delivered to it with explicit directions to apply the proceeds on payment of the notes. Those directions were assented to by the bank officer, and the checks collected from the general fund. From that moment the bank was bound to hold the money for, and apply it to, that purpose, and no other, or, failing to do so, return it to the petitioner. As to it, the bank was bailee or trustee, but never owner. * * * It assumed a duty, and the receiver, as its representative, is bound by it. * * * The checks were impressed with a trust, and no change of them into any other shape could devest it so as to give the bank or its receiver any different or more valid claim in respect to them than the bank had before the conversion." The case here is precisely like that. The money was delivered by the plaintiff to the bank, not as a depositor, or to be placed to his credit, but to pay the plaintiff's note with that money when his note should be presented at the bank for payment. The bank had no right to do anything else with it. As, in the case cited, it became "bailee or trustee, but never owner." The identity of the money is found here, as in that case, in the increased amount of the assets at the time of the failure of the bank by just the amount of the plaintiff's money left with it. The case of Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504, is not in conflict with the Rochester City Bank Case. In the Cavin Case, White, the assignor, used the entire $3,000, except $30, intrusted to him by the Cavins, in paying his personal debts and liabilities, and the trust fund was not, therefore, included in the proceeds of the assigned estate. It was there held that

the petitioners were not entitled to preference over the general creditors; that, to authorize such a preference, some specific recognized equity, founded on some agreement or relation of the debt to the assigned property, must be shown, which entitled the claimant, according to equitable principles, to preferential payment. The decision was not put upon the ground that the identical money could not be traced into the hands of the assignee, but that, as said by Andrews, J.: "The trust fund, with the single exception mentioned, was misappropriated by White to the payment of his private debts prior to the assignment. It cannot be traced into the property in the hands of the assignee, for the plain reason that it is shown to have gone to the creditors of White in satisfaction of their debts." In reply to the suggestion that, by the application of the fund to the payment of White's creditors, the assigned estate was relieved pro tanto from debts which would otherwise have been charged upon it, and thereby the general creditors, if entitled to distribution, without regard to the petitioner's claim, would be benefited, he says: "We think this is quite too vague an equity for judicial cognizance, and we find no case justifying relief upon such a circumstance." The application of the rule to the facts existing here is expressly recognized in the opinion of Judge Andrews, where he says: "If it appears that trust property specifically belonging to the trust is included in the assets, the court, doubtless, may order it to be restored to the trust. So, also, if it appears that trust property has been wrongfully converted by the trustee, and constitutes, although in a changed form, a part of the assets, it would seem to be equitable, and in accordance with equitable principles, that the things into which the trust property has been changed should, if required, be set apart for the trust, or, if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property, or funds or proceeds of the trust property, entering into and constituting a part of the assets. This rule simply asserts the right of the true owner to his own property." And that is, as already stated, the case here. The plaintiff is entitled to the relief demanded in the complaint, with costs.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

C. W. Kimball, for appellant.

Huson & Dwelle, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of NASH, J., delivered at the equity term. All concur, except WARD, J., not voting.

(42 App. Div. 576.)

UNION BANK OF BUFFALO v. PARSONS et al.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

SUBROGATION—MARSHALING SECURITIES—ELECTION BETWEEN FUNDS.

A bank held a mortgage, and also notes signed by the mortgagor and another; the makers, as between themselves, being under obligation to discharge their debt on the notes in equal proportions. Another creditor had recovered a judgment against the mortgagor, which was a second lien on the mortgaged property. Held that, on an election by the bank to collect its debt from the mortgaged property, the judgment creditor was entitled to be subrogated to the rights of the bank on its notes against the second maker, to the extent that the mortgagor could have enforced contribution.

Appeal from special term, Erie county.

Action by the Union Bank of Buffalo against Conroy and others for foreclosure of a mortgage. Appeal from an order setting aside the answer of defendant Parsons as frivolous. Reversed.